O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IVAN HILL,<br><br>        Petitioner,<br><br>        vs.<br><br>KEVIN CHAPPELL, Warden,<br>California State Prison at San Quentin<br><br>        Respondent. | Case No.: CV 12-4909 CAS<br><br>**<u>DEATH PENALTY CASE</u>**<br><br>ORDER DENYING AND<br>DISMISSING PETITION FOR WRIT<br>OF HABEAS CORPUS |

## I.    BACKGROUND

Petitioner, Ivan Hill, was convicted and sentenced to death in 2007 for the serial murders of six women along the 60 freeway corridor east of Los Angeles in the early to mid-1990's.[1]    Each of the victims was strangled and their bodies were dumped on the side of the road.  Petitioner subsequently pled guilty to the murder of two additional victims that he had killed in the 1980's.[2]  For those murders he received a sentence of life without the possibility of parole.  Petitioner had also previously been convicted of the murder of a liquor store clerk during the commission of a robbery in 1979.

Petitioner applied to the California Supreme Court for the appointment of counsel on May 23, 2007 and the State Public Defender was appointed on July 13,

---

[1] See http://articles.latimes.com/2007/jan/03/local/me-hill3.
[2] See http://www.insidesocal.com/sgvcrime/2009/05/sgv-serial-killer-admits-to-ad.html.

2011. (*See* California Supreme Court Case No. S152463 ("State Docket").)  As of this date, no petition for review is yet on file in Petitioner's direct review case.

On June 5, 2012, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus with this Court.  Though he casts his petition as being filed under 28 U.S.C. § 2241, the contents of the pleading make it clear that Petitioner is seeking relief from what he believes to be his wrongful conviction and sentence.  (Pet. at ii.) This case falls within the statutory scheme established by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) codified at 28 U.S.C. § 2254.

## II.   DISCUSSION

### A.   Petitioner Has Not Exhausted His State Court Remedies and Has Not Been Subjected to a Suspension of the Writ

Under AEDPA, a state prisoner can only bring a federal habeas petition if "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  There is a narrow exception to the exhaustion requirement crafted specifically for those situations where there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the prisoner.  28 U.S.C. § 2254(b)(1)(B)(i).(ii).

Though Petitioner has designed his complaint in the form of a request to be permitted to bypass state habeas proceedings under subsection (b)(1)(B)(ii), his actual complaint is that, an ongoing due process violation is occurring because his state direct appeal and habeas corpus cases have not been resolved.

AEDPA limits the federal courts' ability to entertain habeas corpus petitions by state prisoners. This Court cannot entertain such a petition unless the petitioner has exhausted all state court remedies available to him. 28 U.S.C. § 2254(b)(1)(A). The only exception to this "complete exhaustion" rule exists in those cases where the petitioner can demonstrate either that there is an absence of available state

corrective process; or circumstances exist that render such process ineffective to protect his rights.  28 U.S.C. § 2254(b)(1)(B).

Petitioner apparently believes that the California's State Court Policies violate the federal constitution. The Court has consulted those policies in connection with its holding herein.[3] Petitioner complains that the policies operate to suspend habeas corpus or other collateral challenge because: the appointment of counsel for state habeas proceedings is not required until after the direct appeal; the appointment of counsel for direct appeals takes four to six years; and, in actuality a habeas brief may not be filed for eight to ten years post-conviction and sentence. He believes his opportunity to have his claims of conspiracy and malfeasance heard by the federal courts is being hampered by these policies.

The California Supreme Court Policies state that the "appointment of habeas corpus counsel for a person under a sentence of death shall be made simultaneously with appointment of appellate counsel, or at the earliest practicable time thereafter." (Policy 3.2-1.)  Thus, Petitioner's claim that by policy the California courts do not appoint habeas counsel until after the direct appeal has been adjudicated is demonstrably false.  Indeed, the policies contemplate different timeliness measures for the filing of the state habeas petition based on the type of appointment that is made.  If direct appeal counsel is also appointed as state habeas counsel, then the habeas petition must be filed within 180 days of the date filing of the reply brief on direct appeal.  (Policy 3.1-1.2.)  On the other hand, if habeas counsel is appointed apart from direct appeal counsel, then the petition is not due until 36 months after the date on which habeas counsel was appointed.  (Policy 3.1-1.2.)  It is therefore conceivable that when counsel is appointed in this case, the appointment will be dual in nature and Petitioner's habeas claims will be considered earlier rather than later.  In the Court's own experience, the California Supreme Court regularly makes such dual appointments.

---

[3] See www.courts.ca.gov/documents/PoliciesMar2012.pdf - 2012-03-05.

Petitioner claims that lengthy appellate delays are also prejudicial to him receiving the full benefits of due process.  These claims are essentially identical to recent pro se prisoner claims made in this District and others that the state court's procedures either amounted to a suspension of the writ or made the filing of state appellate or post-conviction petitions an exercise in futility. *See Brasure v. Martel,* CV 11-5451 PSG, *Reed v. People of the State of California,* CV 12-0557 JFW, *Shove v. Chappell*, CV 12-2194 R, *Williams v. Chappell*, CV 12-3975 AG, *Gay v. Chappell*, CV 12-4677, *Howard v. Chappell*, CV 12-5222 DOC, and *DeBose v. Chappell*, CV 12-5254 DDP

There is no controlling case law in this Circuit that supports the notion that lengthy appellate delay could support a finding that pending, or yet to be filed, habeas claims have been exhausted.   Though decided in terms of an actual habeas claim, and not in relation to an effort to bypass the complete exhaustion requirement, the Court of Appeals decision in *Hayes v. Ayers*, 632 F.3d 500 (9th Cir. 2011) is instructive on how the Court should consider Petitioner's request here.  In *Hayes*  the petitioner had been on California's death row for eleven years prior the filing of his opening brief on direct appeal.  *Id.* at 523.  Hayes brought a habeas claim for due process violations of his purported right to a speedy appeal. *Id.*  Though he cited case law, including law from this circuit, that suggested that such a claim could be viable, the Court of Appeals ultimately determined that such a claim could not be brought because there was no United State Supreme Court precedent finding that such a right existed.  *Id.*  In addition, the Court of Appeal's found that the petitioner had identified no prejudice that resulted from the eleven year delay.  *Id.*

The Court of Appeals reaffirmed this essential holding in *Blair v. Martel*, 645 F.3d 1151 (9th Cir. 2011) when it found that it could not consider the petitioner's habeas claim that his due process rights had been violated by a thirteen year appellate delay.  *Id*. at 1158.  In like manner, the federal courts cannot compel

the state courts to process an appeal except perhaps through consideration of a claim under 42 U.S.C. § 1983.  Id. at 1157 – 58.  These findings are consistent with the United States Supreme Court's holding that the Anti-terrorism and Effective Death Penalty Act of 1996 (AEPDA), codified at 28 U.S.C. § 2254, limits the federal courts' ability to disturb state criminal court judgments.  AEDPA's goal is the promotion of comity, finality, and federalism, giving the state courts the first opportunity to review claims and correct any constitutional infirmities in the first instance.  *Cullen v. Pinholster*, 131 S. Ct. 1398, 1401 (2011).  Given that only five years have passed since Petitioner's conviction and sentence, and since counsel has been appointed to represent him on direct appeal, there is no discernible basis for going forward with this petition and overriding the principles of federalism and comity that inform federal habeas jurisprudence.

Petitioner may also be implying that he has fallen victim to a de facto suspension of the writ.  Even if he could establish an undue delay by the California courts in processing his habeas petition, federal law still binds this Court's consideration of any suspension allegations.  The Suspension Clause states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const., art. I, § 9, cl. 2.  There is very little agreement over the scope and meaning of the Suspension Clause.  As the Supreme Court has stated:

> Our case law does not contain extensive discussion of standards defining suspension of the writ or of circumstances under which suspension has occurred.  This simply confirms the care Congress has taken throughout our Nation's history to preserve the writ and its function.  Indeed, most of the major legislative enactments pertaining to habeas corpus have acted not to contract the writ's protection but to expand it or to hasten resolution of prisoners' claims.

*Boumediene v. Bush*, 553 U.S. 723, 773 (2008).

Such is the case in California where the State Supreme Court recently extended the presumptive timeliness for filing a petition by doubling the time limits from 90 to 180 days in the case of dual appointment and increasing the time

frame by fifty percent from 24 to 36 months in the case of separate appointments. (Policies, Official Notes Nos. 1 & 2.)  Moreover, the policies mandate the appointment of habeas counsel in all capital cases in an effort to ensure that potentially meritorious habeas corpus petitions will be presented in a timely fashion.  (Policy 3(i).)  These policies demonstrate that the State Supreme Court is cognizant of the time constraints on counsel, the complexity of habeas cases, and the sometimes arcane nature of habeas law.  Of course that court is also fully aware both that its policies impose no limits on the number of times a habeas petitioner can return to the state courts with new theories of relief and that the sheer volume of cases pending before it is high.

That California's policies track with the Supreme Court's observations in *Boumediene* is not, however, the most compelling reason why this Court declines to find that there is a de facto suspension of the writ in the delay in adjudicating Petitioner's state appellate and habeas claims.  Rather, it is because the Suspension Clause does not apply to the states.  *Gasquet v. LaPeyre*, 242 U.S. 367 (1917) (The Suspension Clause is not a limitation on State action); *Geach v. Olsen*, 211 F.2d 682, 684 (7th Cir. 1954) (same); *Harvey v. State of South Carolina*, 310 F. Supp. 83, 85 (D.S.C. 1970) (same).  Thus, any obligations arising out of the Suspension Clause fall on Congress and on the federal courts, not on the courts of the State of California.  Petitioner cannot claim that the five years that have passed since he was convicted and sentenced amount to a suspension of the writ.  This is particularly true given that counsel has been appointed and is, by all appearances, working on getting Petitioner's direct appeal petition on file.

Though suspension of the writ is not the touchstone to a potentially meritorious argument that exhaustion should not be required, Petitioner still must make a substantial showing in order to succeed in doing so.  The Court of Appeals has found that a habeas petitioner may forgo the presentation of claims to the state court if doing so would be an "empty gesture."  *Rivera v. Pugh*, 133 F.3d 928 (9th

Cir. 1997).  The First Circuit has found that §2254(b)(1) applies where "a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field." *Allen v. Attorney General of Maine*, 80 F.3d 569, 573 (1st Cir.1996).  The Third Circuit followed *Allen* in *Lines v. Larkins*, 208 F.3d 153 (3d Cir. 2000).  These cases demonstrate that to the extent that federal courts are willing to consider the circumstances under which a petitioner can avoid exhaustion under section 2254(b)(1)(B), he or she must establish that to do so would be pointless.

The Supreme Court has also held that a petitioner may be excused from exhausting state remedies if a return to the state courts would be futile. *See Lynce v. Mathis*, 519 U.S. 433, 436, n.4 (1997). The exact contours of this exception are not entirely clear but both the United States Supreme Court and the Court of Appeals have looked on this exception with disfavor. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 130 (1982); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993).  "[I]f the highest state court has recently addressed the issue raised in the petition and resolved it adversely to petitioner, in the absence of any intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions," exhaustion may be futile. *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981). For example, when the petitioner's claim is identical to a claim already presented and rejected by the state's highest court, failure to exhaust that claim may be excused as futile. *See Lynce v. Mathis*, 519 U.S. 433, 436 n.4 (1997) (excusing petitioner from presenting his Ex Post Facto Clause claim to the highest state court where that court had decided the identical issue in another case).

The futility doctrine is most appropriately applied when the issue involves pure law rather than an issue of fact or mixed question of law and fact. Compare *id.* (recognizing that futility excused exhaustion of pure legal issue regarding

statutory challenge based on ex post facto violation), with *Noltie*, 9 F.3d at 405 (futility doctrine did not excuse petitioner from failing to raise juror claim in state court even though petitioner had exhausted a claim regarding another juror because facts of both claims were different). The futility doctrine may also excuse exhaustion if the factual or legal basis of the claim was not reasonably available at the time the petitioner pursued his state remedies. *Cf. LaGrand v.Stewart*, 173, F.3d 1144, 1148 (9th Cir. 1999) (excusing procedural default based on futility). None of these scenarios is present here.  In fact, Petitioner's sole basis for filing this petition is that he believes the California Supreme Court is taking too long.

Petitioner has an available state court remedy and he is in the process of pursuing it.  There is no legal or factual support for the filing of this habeas petition.  Any delays he has experienced are not distinct from those experienced by other similarly situated petitioners.  Only five years have passed since he was convicted on multiple counts of aggravated murder and sentenced to death.  It is reasonable for the State Supreme Court to decide claims made on direct appeal prior to considering any habeas petition.  If that court were to find a basis for overturning the conviction on direct appeal, it would obviate the need to decide the merits of any habeas claims. This petition is premature and must be dismissed.

## B.    Petitioner's Conflict of Interest Claim is Illusory

Although Petitioner's pleading also addresses an alleged conflict of interest with his appointed attorneys, his complaint is not about lack of attorney communication or mishandling of the merits of his substantive claims.  Rather he bases his claim of an alleged conflict on the fact that his appointed attorneys feel bound by the policies, procedures, rules, and rulings of the California Supreme Court, and further that they have declined to bring claims challenging the California State Court system before this Court.

This is not a bona fide conflict of interest.  Rather, it is an attempt to present substantive claims to the Court which Petitioner's attorneys have not raised.

Moreover, there is nothing the least bit ineffectual about the attorneys' declination to raise Petitioner's challenges to the California State Court system.  Even if this Court believed the California State Court system and its policies were flawed, it is without authority to provide a remedy.  Finally, the claims that Petitioner wishes to pursue are not cognizable on federal habeas corpus.  For all of these reasons, his attorney conflict claims must be rejected.

### C.    The Requirements for  a Certificate of Appealability Have Not Been Met

The issuance of certificates of appealability in habeas cases is controlled by 28 U.S.C. § 2253.  The statute states that unless a judge issues a certificate of appealability, an appeal may not be taken from the final order in a habeas corpus proceeding in which the determination complained of arises out of a process issued by a State court.  28 U.S.C. § 2253(c)(1)(A).  Further, the statute states that a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Though Petitioner complains that his due process rights are being violated by the slowness of the state court proceedings, no such claim is cognizable under AEDPA because habeas corpus proceedings exist to test and determine the constitutional viability of the trial proceedings that led to the petitioner's conviction and sentence and not the fairness of state habeas proceedings.  Further, the United States Supreme Court has never held that a due process violation occurs when a state court delays its decision on a direct appeal or habeas petition.  For these reasons the Court will not issue a certificate of appealability in this case.

### III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED and DISMISSED without prejudice to Petitioner reasserting these claims after the exhaustion requirements set forth in federal statute and controlling case

law have been met.  In addition, the requirements for the issuance of a certificate of appealability have not been met and therefore, the Court declines to issue the same.

**IT IS SO ORDERED.**

Dated this 19th of June, 2012

Christina A. Snyder
UNITED STATES DISTRICT JUDGE